J-S12019-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: THE ESTATE OF ROSA PILEGGI, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: SALVATORE PILEGGI | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2443 EDA 2023 |

Appeal from the Order Entered August 25, 2023
In the Court of Common Pleas of Montgomery County
Orphans' Court at No(s):  2021-X5346

BEFORE:  DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JULY 03, 2024**

Salvatore Pileggi ("Sal") appeals *pro se* from the order dismissing his petition for accounting by persons holding power of attorney and for money damages.  We affirm.

We take the underlying facts and procedural history from the Orphans' Court's opinion:

> Rosa ["Rosa"] and Frank T. Pileggi ("Frank T"), Italian immigrants, were married for more than sixty years.  They had four children: Sal, Antonio ["Antonio"] (who pre-deceased his mother in 2018), Teresa ["Teresa"] and Frank ["Frank"].  In 2007, Rosa suffered a serious stroke which left her impaired for the remainder of her life. Her husband[,] Frank T[,] cared for her until his death [in January 2016]. They lived together in the family home . . . (["family home"]) throughout this period.  The actions at issue in this litigation took place during the period between Rosa's stroke in 2007 and her death [in July 2021], but more specifically during the period between Frank T's death in 2016 and Rosa's death in 2021.
>
> [A] few months after Frank T's death, Rosa granted her durable power of attorney ("POA") to Teresa and Frank.  She also signed

a new will ("[w]ill") [in January 2021], six months before her own passing. She did not name Sal as either her agent or her executor as Sal had a history of bad decision-making when it came to finances.

[In December 2021], Sal filed a petition against Teresa and Frank for breach of fiduciary duty and fraudulent conveyance, seeking an accounting of actions taken pursuant to the POA and for money damages in the form of a surcharge. . . .[1] [Following the filing of amended pleadings, answers, and discovery], Sal's counsel withdrew[,] then again entered his appearance several times, leading to further delays. A final request to withdraw was denied by [the Orphans' Court] and trial was scheduled[.] [One week prior to trial], Sal's counsel filed a motion *in limine* seeking to preclude anticipated testimony **by Frank** that Rosa directed him to transfer title of [the family home to Teresa. A trial ultimately took place in August 2023]. On the following day, [the Orphans' Court] issued the order from which [Sal] appeals. . . .

Orphans' Court Opinion, 11/30/23, at 1-2 (record citations and quotation marks omitted, footnote and emphasis added). Sal and the Orphans' Court complied with Pa.R.A.P. 1925.[2]

On appeal, Sal raises three issues for our review:

1. Did the Orphans' Court err holding that [Sal] did not meet his burden of proof that [Teresa and Frank] breached their fiduciary duty to Rosa [] which reduced her estate and thereby injured [Sal]?

---

[1] Sal's claims of misconduct involved two issues, the 2021 sale of the family home from Frank as POA for Rosa to Teresa for less than fair market value, and the alleged misappropriation of certain rental incomes which Teresa did not deposit into Rosa's bank account but instead used to pay for Rosa's care. ***See*** Orphans' Court Opinion, 11/30/23, at 5 and n. 3.

[2] Sal's 1925(b) statement was filed by counsel. However, counsel never entered an appearance in this Court and Sal has proceeded *pro se.*

2. Did the Orphans' Court err by admitting statements that should have been excluded by the "Dead Man's [Act[3]]" and by accepting hearsay and unsupported statements as true over [Sal's] testimony that was backed by clear and convincing evidence of the will and trust of the principal?

3. Did the Orphans' Court err [sic] that [Sal] did not meet his burden of proof[,] denying him a proper accounting to be filed with the Court?

Sal's Brief at 4 (footnote added).

Our scope and standard of review are well settled:

[w]hen reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. The Orphans' Court decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

This Court's standard of review of questions of law is *de novo*, and the scope of review is plenary, as we may review the entire record in making our determination. When we review questions of law, our standard of review is limited to determining whether the trial court committed an error of law.

*In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016) (*en banc*) (citations and quotation marks omitted; paragraph division altered).

In his first issue, Sal contends the Orphans' Court erred in denying his claims of misconduct, finding against him with respect to his claims of breach of fiduciary duty and fraudulent conveyance. *See* Sal's Brief at 12-18. Sal

_____

[3] *See* 42 Pa.C.S.A. §§ 5930-5933.

- 3 -

argues the Orphans' Court wrongly credited Frank's and Teresa's "unsubstantiated stories and character attacks on [Sal]." *Id*. at 12. Sal further avers Frank and Teresa were "caught stealing" and their testimony was "fabricated." *Id*. at 13. Sal maintains the Orphans' Court ignored Rosa's intent as expressed in a 1997 revocable trust and her 2021 will. *See id*. at 14.

The Orphans' Court made the following factual findings:

> Rosa and Frank T were a loving couple with four children. They were a close-knit family, except that there was some litigation brought by Sal over the family nursery business[.] . . . Over the years, Sal took money and a building gifted by his parents to start several unsuccessful businesses. [Sal ultimately relocated to northeastern Pennsylvania.] . . .
>
> * * * * *
>
> Rosa suffered a severe stroke in 2007 which left her significantly impaired. She no longer had use of her right hand and had a limited ability to speak, which Sal, Teresa and Frank all testified was limited to a few words, mostly in Italian, plus hand gestures they understood. Frank T . . . insisted "over and over again" per Frank, that she should **never never** be put into a nursing home[;] she would live with Teresa and her family after he died[,] and Teresa would be getting the house and all the rent checks to help pay for Rosa's support. He made these statements in the presence of Teresa, Frank, Antonio[,] and Teresa's husband. . . . Frank T. took wonderful care of Rosa until his death in 2016, at which point Antonio and Teresa took on the greater burden until Antonio's death in 2018. Teresa testified that she loved her mother and altered her life . . . to accommodate her mother's needs. Frank assisted by taking his mom out every Thursday so that Teresa and her husband could have a "date night".
>
> Rosa lived at the [family home] until her final illness in 2021 when she was hospitalized. She had created a trust pursuant to a revocable trust agreement [in] 1997, which agreement provided

in Article 6 that, upon the death of Frank T and Rosa, her trust estate should be divided equally among her four children (with any deceased child's share going to his or her children in equal shares). Early in 2021, Rosa also had estate planning documents prepared[, including a will.] The will does not specifically mention [the family home] and provides that her estate should be divided equally between her four children, with Antonio's share to be divided between his three living children. According to Frank, although Rosa signed the will, she was quite upset that it did not include bequeathing [the family home] to Teresa — as Rosa wanted Teresa to have the whole house.

Notwithstanding Rosa's trust document . . . providing for equal division of her trust assets and estate upon her death, [in July 2016], she granted the POA to Frank and Teresa and, as testified to by both Teresa and Frank, made them aware of her wish that Teresa should get [the family home]. Section III A of the POA, with the heading "Real Estate (Including My Personal Residence)" granted "the power to buy or sell [the family home] at public or private sale . . . under such covenants as my Agents [approve]." According to Teresa, and confirmed as to both parents by Frank, her mother frequently said to her "*casa mia tua*", the translation of which ("my house is yours" or "my house for you") was viewed differently by Rosa's children. Both Frank and Teresa gave testimony about family meetings where, despite Rosa's wishes that Teresa get the house — as a gift or because of her care of her mother over the years — Teresa refused, not wanting drama and fearful of a lawsuit by Sal. Frank confirmed this fear of Teresa's. Finally, Teresa agreed to ***purchase*** [the family home] at a discount.

[Approximately three weeks prior to Rosa's death], Frank, as agent under the POA, but with his mother's awareness at the time, following the express wishes of both his father and his mother that Teresa should have [the family home] because of the loving care she had provided to Rosa and the expenses she had incurred in connection with that care, conveyed [the family home] to Teresa for . . . $190,000. [Sal] alleged that this was a fraudulent conveyance, far below market value, requiring the court to order Teresa and Frank, as agents under the POA[,] to return [the family home] to Rosa's estate and further provide an accounting of other actions taken under the POA and return cash and/or other property "wrongfully taken" to the estate. Teresa testified that Sal had wanted the house for himself "at that

- 5 -

price[,]" but Sal did not testify to that effect or present any evidence to confirm or refute Teresa.

Orphans' Court Opinion, 11/30/23, at 3-5 (record citations and footnotes omitted, some capitalization and punctuation regularized, emphases added).

In making these findings of fact, the Orphans' Court explained Sal made "blanket accusations" but "failed to convince [the Orphans' Court] of the substance or validity of those accusations." ***Id***. at 13. The court specifically credited the testimony of Frank and Teresa and found Sal's testimony to be "far-fetched." ***Id***.

We have thoroughly reviewed the trial transcript and relevant documentation and have no basis to overturn the Orphan's Court's decision. As we have stated:

> Our standard of review of the findings of an orphans' court ***is deferential***. . . . Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses[.]
>
> \* \* \* \* \*
>
> . . . The test to be applied [on appeal] is not whether we, the reviewing court, would have reached the same result, ***but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion***.

***In re Estate of Devoe***, 74 A.3d 264, 267 (Pa. Super. 2013) (quotation marks and citations omitted, emphases added). Sal's argument is a request we reweigh the evidence, disregard the Orphans' Court's credibility determinations, and substitute our judgment for that of the Orphans' Court. ***See*** Sal's Brief at 12-18. We cannot do this. ***See Estate of Edward***

*Winslow Taylor Inter Vivos Trust*, 169 A.3d 658, 663 (Pa. Super. 2017) (noting it is not the Superior Court's role to reweigh the [Orphans' Court's] credibility determinations); *In re Vincent J. Fumo Irrevocable Children's Trust ex rel. Fumo*, 104 A.3d, 535, 550 (Pa. Super. 2014) (explaining the Superior Court defers to the Orphans' Court's factual findings and credibility determinations). Sal's first issue does not merit relief.

In his second and third issues, Sal claims the Orphans' Court erred by admitting hearsay evidence, violating the Dead Man's Act, and not requiring an accounting with respect to rental income received during the period Teresa and Frank held Rosa's POA. *See* Sal's Brief at 19-23. Prior to addressing the merits of these claims, we must address whether Sal properly preserved them. *See*, *e.g.*, *Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (explaining "[t]he fact [a]ppellants filed a timely [court-ordered] Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation."). To preserve a claim for appeal, an appellant must include it in his court-ordered Rule 1925 concise statement of errors complained of on appeal:

> Rule 1925 . . . states that **"[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."** Pa.R.A.P. 1925(b)(4)(vii). In *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306 (1998), our Supreme Court held that "from this date forward, in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." *Lord*, 719 A.2d at 309. This Court has held that "[o]ur Supreme Court intended the holding in *Lord* to operate as a bright-line rule, such that 'failure to comply with the minimal

requirements of Pa.R.A.P. 1925(b) will result in **automatic waiver** of the issues raised.'" **Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.**, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*) (emphasis in original).

**U.S. Bank, N.A. v. Hua**, 193 A.3d 994, 996-97 (Pa. Super. 2018) (some citations omitted, emphasis added); **see also Greater Erie Indus. Dev. Corp.**, 88 A.3d at 224 ("it is no longer within this Court's discretion to ignore the internal deficiencies of Rule 1925(b) statements.").

In addition,

[R]ule 1925 is a crucial component of the appellate process because it allows the trial court to identify and focus on those issues the parties plan to raise on appeal. This Court has further explained that a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all.

**Tucker**, 939 A.2d at 346 (citations omitted).

Although Sal filed a Rule 1925(b) statement, he never raised the issue identified in his brief relating to the accounting for the rental income. **See** Sal's Brief, at 21-23; Concise Statement of the Errors Complained of on Appeal, 10/17/23, at 2-3. Thus, the Orphans' Court did not address this issue in its opinion. **See generally**, Orphans' Court Opinion, 11/30/23, at 1-14. Accordingly, Sal waived his third issue.

While Sal did raise a claim regarding the overruling of his objections to hearsay testimony and alleged violations of the Dead Man's Act in his Rule 1925(b) statement, he did not specify which of his many hearsay objections he believed the trial court improperly overruled or specify the precise

testimony that allegedly violated the Dead Man's Act. *See* Concise Statement of the Errors Complained of on Appeal, 10/17/23, at 3.

This Court has stated:

[t]he Rule 1925(b) Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge. The Rule 1925(b) statement must be sufficiently concise and coherent such that the trial court judge may be able to identify the issues to be raised on appeal, and the circumstances must not suggest the existence of bad faith.

*Fulano v. Fanjul Corporation*, 236 A.3d 1, 9 (Pa. Super. 2020) (quotation marks, brackets, and citations omitted).

Here, the Orphans' Court stated it believed Sal's statement too vague to allow it to address this issue. *See* Orphans' Court Opinion, at 8, 10. It noted Sal made "numerous hearsay objections" during trial but "did not identify which of those rulings he alleges constitutes reversible error . . . so those allegations must necessarily be waived." *Id*. at 10. Presumably because Sal mentioned the denial of his motion *in limine* regarding the Dead Man's Act in the Rule 1925(b) statement, the Orphans' Court discussed its reasons for denying that motion. *See* Concise Statement of the Errors Complained of on Appeal, 10/17/23, at 3; Orphans' Court Opinion, 11/30/23, at 11-12. However, the motion *in limine* only sought to preclude *Frank's testimony* pursuant to the Dead Man's Act. *See* Motion *in Limine*, 7/3/23, at 1. On appeal, Sal abandons any arguments regarding *Frank's testimony* and only addresses the denial of two of his objections (based on hearsay and

the Dead Man's Act) to **Teresa's testimony**.  **See** Sal's Brief at 19-21; N.T., 8/24/23, at 99-100.  There was no way for the Orphans' Court to determine from Sal's generic claim the specific issues he argues in his brief.  Thus, the Orphans' Court did not address these arguments in its Rule 1925(a) opinion.  **See** Orphans' Court Opinion, 11/30/23, at 11-12.  Because Sal failed to properly preserve this argument, he waived his second issue as well.  **See Fulano**, 236 A.3d at 9.

For the reasons discussed above, we conclude Sal's issues are either meritless or waived.  Accordingly, we affirm the Orphans' Court's order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/3/2024

- 10 -